**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL HALL, #223715,

    Petitioner,

Civil No: 2:08-CV-10354

HONORABLE GERALD E. ROSEN

v.

BLAINE LAFLER,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner, Michael Hall, is a state inmate currently incarcerated at Newberry Correctional Facility in Newberry, Michigan. Petitioner was convicted at the conclusion of an Oakland County Circuit Court jury trial of second-degree murder, Mich. Comp. Laws §750.317[1]. Petitioner was sentenced as an habitual offender, second offense, Mich. Comp. Laws §769.10, to 60 - 90 years' imprisonment. Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

## I. BACKGROUND

Petitioner's conviction arises from the manual strangulation of fifteen year old Lauren Church. A police investigation into the victim's cell phone records coupled with a jail house informant's testimony and inculpatory statements made by the Petitioner during police

___

[1] Petitioner was acquitted of first degree premeditated murder. Mich. Comp. Laws §750.316.

interviews provided a factual basis for Petitioner's conviction by an Oakland County jury .

>Petitioner filed an appeal of right and raised the following issues:
>
>"I. Mr. Hall's Fifth and Fourteenth Amendment rights under the U.S. Constitution were violated when the trial court admitted, over defense objection, Detective Benson's testimony regarding Mr. Hall's unmirandized, involuntary, unrecorded September 8, 2004 statement.
>
>II. Mr. Hall's second-degree murder conviction violates his state and federal constitutional right to due process because the evidence is insufficient to sustain the conviction.
>
>III. Mr. Hall was denied his due process right to a presumption of innocence under the Fifth and Fourteenth Amendments of the U.S. Constitution and Art. 1 (17) of the Michigan Constitution because he appeared in shackles in plain view of the jury for a prolonged period of time.
>
>IV. The trial court erred in admitting, over objection, highly prejudicial testimony regarding Mr. Hall's largely unsubstantiated sexual interest in Lauren.
>
>V. Mr. Hall is entitled to resentencing where the court improperly scored 25 points for offense variable 13 based on three offenses that occurred over ten years prior to the sentencing offense."

The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded for resentencing, finding as follows:

>The prosecution concedes that defendant is entitled to resentencing under *People v. Francisco,* 474 Mich. 82, 85; 711 NW2d 44 (2006). However, the prosecution argues that resentencing is unnecessary because the trial court made statements on the record that could be construed as substantial and compelling reasons to sentence defendant above the guidelines. It is not enough that a substantial and compelling reason to sentence defendant above the guidelines may exist. *People v. Babcock,* 469 Mich. 247, 258-259; 666 NW2d 231 (2003). The reason or reasons must be articulated on the record as such. See *id.* Therefore, we remand for the trial court to properly resentence defendant.

*People v. Hall,* No. 265458, 2007 WL 466059 at *5 (Mich. Ct. App. Feb. 13, 2007).

Following the appellate court's remand, the trial court sentenced Petitioner as a second

habitual offender to 60 - 90 years' imprisonment. Petitioner appealed the trial court's decision, but the imposition of sentence was affirmed. *People v. Hall,* No. 277284, 2008 WL 902205 (Mich. Ct. App. April 3, 2008).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same claims presented to the Michigan Court of Appeals with the exclusion of the sentencing claim. Petitioner's application for leave to appeal was denied. *People v. Hall,* 480 Mich. 854 (2007) (table).

Petitioner now seeks to file a writ of habeas corpus raising the same four claims referenced above. Respondent has filed an answer to the petition asserting that habeas relief is not warranted in this case.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous"). The Supreme Court explained the proper application of the "contrary to" clause:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06 (internal citation omitted).

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-

4

court decision unreasonably applies the law of this Court to the facts of a prisoner's case."

*Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under §2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11 (emphasis in original); *see also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

### III. DISCUSSION

### A. Improper Admission of Inculpatory Statements

Petitioner's first claim seeks habeas relief based upon the trial court's admission of a statement made by Petitioner to Detective Marlon Benson on September 8, 2004 while Petitioner was in custody at the Ingham County Jail. Petitioner argues that his September 8 statement to Detective Benson never occurred. Alternatively, Petitioner claims that such a statement should have been suppressed because the statement was coerced, unrecorded and given without Petitioner being advised of his *Miranda* warnings. Regarding the issue of whether the statement occurred, the Michigan Court of Appeals stated that Petitioner did not address the issue in his appellate brief and that Petitioner "may not merely announce his position and leave it to this Court to discover and rationalized the

5

basis for his claims." *Hall,* No. 265458, 2007 WL 466059 at *2. Therefore, the appellate court deemed the issue abandoned and declined to review the matter. *Id.* The Michigan Court of Appeals dealt with Petitioner's other challenges to his inculpatory statements as follows:

> Defendant argues that his statement was involuntary because he did not know why he was in custody and a reasonable person in his position would believe that he was jailed as punishment for not confessing to the murder. The arresting officer testified that defendant was arrested for a parole violation, pursuant to a Michigan Department of Corrections warrant. Given the conflicting testimony, we are not convinced that the trial court clearly erred by finding that the officer's testimony was credible. Defendant has failed to cite any evidence, besides his own self-serving testimony, that his arrest and incarceration were pretextual or that he would not have made the statement if not for the incarceration; therefore, we affirm the trial court's finding that defendant's statement was voluntary.
>
> * * *
>
> Defendant urges this Court to adopt a broad rule requiring police to record all interviews with defendants or, or in the alternative, adopt a narrow rule requiring police to record scheduled interviews with homicide suspects when only one officer is present, recording equipment is available and the statements made by the suspect contradict previous statements. We have previously decided this issue in *People v. Fike,* 228 Mich. App. 178, 183-186; 577 NW2d 903 (1998); and more recently in *People v. Geno,* 261 Mich. App. 624, 627-628; 683 NW2d 687 (2004). Based on this authority, no recording requirement is imposed upon police.
>
> * * *
>
> Defendant first claims that, because he did not receive *Miranda* warnings before making the challenged statement, the trial court should have suppressed his statement . . . The prosecution conceded that defendant was in custody, but argues that defendant was not subjected to police interrogation. We agree. At his *Walker* hearing, defendant and the detective, to whom he made his statement, testified and gave radically different accounts of what took place during their meeting. According to defendant, the detective made no attempt to read him his rights and peppered him with questions. The detective, on the other hand, testified that defendant had summoned him to the jail and during their meeting, demanded that the detective not speak, but listen to him because he had something to get off his chest. It is the trial court's job to resolve factual issues, and this Court gives deference to the trial court's resolution of factual issues particularly when a

> factual issue involves the credibility of the witnesses whose testimony conflicts. People v. *Burrell*, 417 Mich. 439, 448-449 (1983). Given that the trial court was presented with two completely different accounts and had the opportunity to observe witnesses and evaluate their credibility, we hold that the trial court did not commit clear error by finding the detective's testimony credible.

*Id.* at *1 - *2.

Petitioner argues that his constitutional rights were violated when the trial court admitted his September 8 statement because (1) he was not given his Miranda warnings; (2) the police tactics were coercive; (3) the statement was unrecorded; and (4) it never occurred. The Court has reviewed the record and finds that Petitioner is not entitled to habeas relief on his first claim.

### 1. Failure to Give Miranda Warnings

This Court cannot find Petitioner's rights were violated by the fact that he did not receive Miranda warnings prior to giving his September 8 statement. When an individual is in custody, it is the duty of law enforcement officers prior to interrogation to warn him of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Statements given freely and voluntarily, however, are not subject to *Miranda's* exclusion. *Id.* at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"). It is undisputed that Officer Benson did not give Petitioner the *Miranda* warnings prior to taking Petitioner's September 8 statement. It is also undisputed that Petitioner was in custody at the time of the statement. The Michigan courts found, however, that the September 8 statement was not the product of interrogation, but rather credited the police officer's testimony that he did not ask any

7

questions of the Petitioner on September 8 but merely listened while the Petitioner voluntarily offered his statement. This factual finding is presumed to be correct, 28 U.S.C. § 2254(e)(1), and the Petitioner has not met his burden of rebutting the presumption with clear and convincing evidence. Given the factual finding of the Michigan courts, the courts' holding that Petitioner's statement was not the product of interrogation, and therefore no *Miranda* warning was required, is not objectively unreasonable in light of clearly established Supreme Court precedent. Habeas relief is therefore not appropriate on this claim.

### 2. Coercive police tactics

Petitioner also argues that his statement was involuntary because he did not know the reason that he was under arrest and that a reasonable person in his position would believe that he was jailed because he did not confess to the murder. If a petitioner can show that "coercive police activity" caused him to make an involuntary confession, due process prohibits the government from relying on that confession. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

The testimony of the Petitioner regarding the circumstances of the statement was in conflict with that of the police, who testified that Petitioner was arrested for a parole violation. The Michigan state court credited the testimony of the police over that of the Petitioner, and such a finding is presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Crediting the testimony of the police, Petitioner's arrest was not the result of coercive police activity but rather the result of the Petitioner's own actions in violation of the conditions of his parole. The conclusion of the Michigan state courts that Petitioner's statement was not the product of coercive police activity

8

therefore is not an unreasonable application of clearly established Supreme Court precedent. Habeas relief is therefore not appropriate on this claim.

### 3. Failure of Police to Electronically Record Interview

Petitioner also asserts that his federal constitutional rights were violated by the failure of the Oak Park police to electronically record his September 8 statement and the admission of the unrecorded statement by the trial court.

There is no United States Supreme Court case holding that a defendant's statements are inadmissible unless the police electronically record interviews with suspects. The relevant Supreme Court precedent is to the contrary. The Court has declined to extend the Due Process Clause to require that the police preserve potentially exculpatory evidence in any particular form, absent a showing of bad faith. *Cf. Arizona v. Youngblood*, 488 U.S. 51 (1988) (failure to preserve evidence from sexual assault kit) *California v. Trombetta*, 467 U.S. 479 (1984) (failure to preserve breath samples); *Illinois v. Fisher*, 540 U.S. 544 (2004) (destruction of cocaine seized by police). It is therefore apparent that no federal constitutional violation occurred, and the rulings of the Michigan courts are consistent with federal law.

### 4. Petitioner's Claim that Statement Was Never Made

Petitioner's final argument is that the statement never occurred at all. Officer Benson, however, testified that Petitioner did make the statement. Petitioner cites no law in support of his argument that the admission of the statement violated his federal constitutional rights based upon Petitioner's claim that it did not occur. There is no Supreme Court precedent barring admission of a statement based upon the defendant's

claim that he did not make such a statement, and habeas relief is therefore unavailable on this claim.

## B. Insufficient Evidence

Petitioner claims that the evidence presented at trial was insufficient to sustain a second degree murder conviction. The Michigan Court of Appeals disagreed, stating as follows:

> The elements of second-degree murder are: 1) a death; 2) caused by the defendant; 3) with malice; and 4) without justification or excuse. The first element is undisputed. Regarding the second element . . . [g]iven the circumstantial evidence, defendant's statement and his cellmate's testimony, we conclude that a reasonable jury could have found that the prosecution proved beyond a reasonable doubt that defendant caused the victim's death.
>
> Regarding the third element . . . [t]he victim died of manual strangulation. Death by manual strangulation is achieved by applying pressure to the victim's neck to such a degree as to deprive the victim of oxygen, whereupon the victim loses consciousness and dies. Clearly, a jury could infer that defendant intended to kill the victim when he began to choke her and did not stop when she lost consciousness.
>
> Regarding the final element, a reasonable jury could have concluded that defendant's action was without justification or excuse. Defendant does not argue on appeal that the killing was justified or excusable, nor is there evidence in the record to support such an argument.
>
> Therefore, we conclude that a reasonable jury could have found beyond a reasonable doubt that defendant committed second-degree murder. Further, we note that juries are not held to rules of logic and may choose, without any apparently logical basis what to believe or disbelieve. The jury in this case was properly instructed with regard to second-degree murder, and it had the ability to convict defendant for that crime. Thus, we reject defendant's assertion that reversal is required because the evidence supported a first-degree murder conviction or no conviction at all.

*Hall,* No. 265458, 2007 WL 466059 at *3 (citations omitted).

Petitioner argues that the prosecution presented evidence of premeditation in the form of expert medical testimony that Lauren Church was manually strangled, and that

10

such manual strangulation would take at least three minutes, more than enough time to permit the assailant to consider and reflect. The defense did not contest this medical evidence or the element of premeditation, but rather relied upon a defense of innocence. Based upon this, Petitioner argues that the murder was necessarily premeditated, and a rational trier of fact could not find Petitioner innocent of first-degree murder but guilty of second-degree murder.

Respondent argues in response that this claim is not really a sufficiency of the evidence claim, but is rather a claim that the jury's verdict, in light of the proofs, was internally inconsistent. The Court agrees. Petitioner is not arguing that the prosecution did not present sufficient evidence on each element of the crime of second-degree murder, but rather that the acquittal of Petitioner on first-degree murder is inconsistent with a conviction of second-degree murder.

An allegedly inconsistent verdict does not provide a basis for habeas relief. Under federal law, inconsistency between verdicts on separate charges against a defendant is not grounds for reversal. *United States v. Powell*, 469 U.S. 57 (1984); *Dunn v. United States*, 284 U.S. 390 (1932). Each count of an indictment is to be determined independently, and a review of sufficiency of the evidence against a defendant does not take into account an acquittal or conviction on any other count. *Powell*, 469 U.S. at 67. "Criminal defendants are instead protected by the due process requirement that a conviction must be supported by sufficient evidence." *Getsy v. Mitchell*, 495 F.3d 265, 307 (6th Cir. 2007) (citing *Powell*, 469 U.S. at 67). Aside from his argument on consistency, Petitioner does not contend that the evidence is insufficient for conviction on second-degree murder, and the Michigan Court of Appeals concluded correctly that there was sufficient evidence to convict Petitioner of

11

second-degree murder. Petitioner therefore is not entitled to the writ of habeas corpus on his second claim for relief.

### C. Prison Shackles

Petitioner next argues that he was restrained in shackles during his trial and in the presence of the jury. He asserts that this violated his right to a fair and impartial trial because he was no longer being presented to the jury in the "garb of innocence." (Pet. at 52). The Michigan Court of Appeals disagreed, finding as follows:

> To begin with, defendant argues that he was denied a fair trial because the shackles were in plain view of the jury. However, he provides no citation to the record establishing this fact. Defense counsel himself, in raising the issue before the trial court on the fourth day of trial, admitted that he had not even noticed the shackles, stating, "So, I don't think there was an issue before just now." Therefore, the record does not provide a basis for a finding that the use of shackles prejudiced defendant. *See People v. Dunn*, 446 Mich. 409, 425; 521 NW2d 255 (1994).
>
> Moreover, under the totality of the circumstances, we do not discern that the trial court abused its discretion. When the trial court asked the deputy about the shackles, the deputy apologized stating that they "needed to consider security" and "had too many incidents recently that we can't just ignore." The trial court agreed that security was a concern and modified the courtroom arrangement using the podium and several boxes to obscure the jury's view of the shackles. Because the trial court's decision was based on a security concern verified by the deputy and it took measures to avoid the jury's view of the shackles, there was no abuse of discretion.

*Hall,* No. 265458, 2007 WL 466059 at *4.

Use of visible shackles during the guilt or penalty phases of a trial is forbidden under the Constitution "*unless* that use is 'justified by an essential state interest' - such as the interest in courtroom security - specific to the defendant on trial." *Deck v. Missouri*, 544 U.S. 622, 624 (2005) (quoting *Holbrook v. Flynn,* 475 U.S. 560, 568-69 (1986)) (emphasis in original). The Michigan Court of Appeals rejected Petitioner's claim about his shackles

12

on two grounds: first, because the record does not establish that the shackles were in plain sight of the jury, and second, holding that the trial court did not abuse its discretion in permitting the shackles because its decision was based on security concern verified by the deputy and because it took measures to avoid the jury's view of the shackles.

Under the United States Supreme Court's holding in *Deck,* the use of shackles is only permissible when justified by an essential state interest "specific to the defendant on trial." *Deck*, 544 U.S. at 624. The trial judge here never made an individualized determination of the need to have Petitioner shackled, but merely deferred to the policy, as stated by the deputy, that all capital defendants are to be shackled during trial. *See Lakin v. Stine*, 431 F.3d 959, 965 (6th Cir. 2005) ("The nature of the charges against a particular defendant cannot themselves provide the entire justification for shackling; rather, all of the relevant factors must be considered, including alternative means of providing a safe and fair trial").

Nonetheless, habeas relief is not warranted on this claim, because there is no evidence that the jury ever saw the shackles. It does not violate clearly established federal law to have a defendant restrained in front of a jury where the restraints are not visible to the jury. *Mendoza v. Berghuis*, 544 F.3d 650, 655 (6th Cir. 2008). The Michigan courts found that the record did not show that the shackles were ever visible to the jury. *See Hall*, No. 265458, 2007 WL 466059 at *4 (finding the record provides no basis for establishing the jury ever saw the shackles). This finding of fact by the state court is binding upon this Court unless Petitioner can show that it is clearly erroneous, 28 U.S.C. §2254(e)(1), which Petitioner cannot do on this record. Defense counsel brought the shackles to the Court's attention on the fourth day of trial, and stated that he himself was not aware of the shackles

before that time, and therefore "I don't think there was an issue before just now." *Hall*, No. 265458, 2007 WL 466059 at *4. Two deputies were questioned on the record about the shackles, but their statements were unclear as to when the defendant had been shackled prior to that time. Trial Tr., Vol. 4 at 29. Once the shackles were brought to the attention of the trial court, the judge had two boxes and a podium moved to obscure the jury's view of the defendant, and then moved about the courtroom and into the jury box to confirm for herself that the jury would be unable to see the shackles. Trial Tr., Vol. 4 at 29-35. The trial judge also confirmed that the shackles were taped and therefore did not make any noise. *Id.* at 35. After the courtroom modifications, the defense did not renew its objection to the shackling, suggest that the shackles were visible to the jury, or seek an evidentiary hearing on whether the shackles were previously visible to the jury. Absent a showing that the shackles were visible to the jury, the Michigan courts' rejection of Petitioner's claim was not an unreasonable application of clearly established Supreme Court precedent. Petitioner is not entitled to a writ of habeas corpus on his third claim for relief.

### D. Admission of Evidence of Petitioner's Sexual Attraction to Victim

Petitioner argues that he was denied a fair trial when the trial judge permitted witness Jamal Hamilton to testify that Petitioner had expressed a sexual interest in the victim, Lauren Church. Specifically, the trial court permitted Hamilton to testify that, about a month before the murder, Petitioner asked Hamilton if Church had a boyfriend and if she "was fucking a lot." Trial Tr. Vol. II, 36, 39. Petitioner objected to the testimony on the grounds that evidence was highly prejudicial and inadmissible under Mich. R. Evid. 403. The prosecution argued that the evidence was relevant because the victim's cell phone records reflected that telephone calls between Petitioner and Church began around the

14

same time as the conversation between Petitioner and Hamilton, and that these facts tended to bolster the credibility of Gary Hall, the jailhouse informant who subsequently testified that Petitioner told him that he killed Church because she was going to reveal their relationship. Trial Tr. Vol. II, 6-7. The prosecution also argued that the testimony contradicted Petitioner's statements to police that he barely knew Church and that they had only casual contact. *Id.,* 7-8. Petitioner contends that because he was not charged with a sexual assault in connection with the murder, any sexual interest he had was irrelevant and prejudicial, particularly given the difference in age between the Petitioner and the victim, which age difference was emphasized by the prosecution.

The Michigan courts held that the testimony of Jamal Hamilton was admissible as a matter of Michigan law because it was relevant to the prosecution's theory of motive and because the evidence was not unfairly prejudicial. *Hall*, No. 265458, 2007 WL 466059 at * 4-5. Federal habeas review of state evidentiary rulings based on state law is extremely limited. *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). "[A] trial court violates due process only if admitting evidence under state law violates 'fundamental conceptions of justice.'" *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (quoting *Dowling v. United States*, 493 U.S. 342, 352-53 (1990)). Petitioner fails to show how admitting evidence of his sexual interest in the victim in this case violated fundamental conceptions of justice, or how the Michigan courts unreasonably applied or contradicted *Dowling* in rejecting this claim. Hamilton's testimony was relevant to the prosecution's argument on motive and to the credibility of Petitioner's statements to the police. The Michigan courts' rejection of Petitioner's claim to the contrary is not an unreasonable application of clearly established federal law. Habeas relief is therefore not warranted on Jamal Hamilton's testimony.

15

### E. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. The Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

### IV. CONCLUSION

Petitioner has not established that he is in the custody of the State of Michigan in violation of the Constitution or laws of the United States. Accordingly,

---

[2]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

**IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed *in forma pauperis* on appeal is **DENIED**.

                        s/Gerald E. Rosen
                        Chief Judge, United States District Court

Dated: November 12, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 12, 2010, by electronic mail and upon Michael Hall, #223715, Newberry Correctional Facility, 3001 Newberry Avenue, Newberry, MI 49868 by ordinary mail.

                        s/Ruth A. Gunther
                        Case Manager